UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MARVIN WILLIAMS,

                          Plaintiffs,                    **REPORT AND**
                                                        **RECOMMENDATION**
                                                        CV 20-3127 (JS) (ARL)

            -against-

MIRACLE MILE PROPERTIES 2 LLC,
MIRACLE MILE PROPERTIES 4 LLC,
PARI GOLYAN, KOUROSH GOLYAN,
JOSEF GOLYAN AND FARAIDOON GOLYAN,

                          Defendants.
-------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

Plaintiff Marvin Williams commenced this action on July 14, 2020, against the

defendants, Miracle Mile Properties 2 LLC, Miracle Mile Properties 4 LLC, Pari Golyan,

Kourosh Golyan, Josef Golyan[1] and Faraidoon Golyan (collectively, "Defendants"), alleging

violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New York

Labor Law §§ 190 et seq. ("NYLL"). On March 29, 2021, Plaintiff moved for default judgment.

ECF No.13. By Order dated April 2, 2021, District Judge Seybert referred Plaintiff's motion for

a default judgment to the undersigned. On July 22, 2021, J. Golyan filed a cross-motion to

dismiss the complaint for insufficient service pursuant to Federal Rule of Civil Procedure

("Rule")12(b)(5) and an opposition to Plaintiff's motion for default judgment. ECF No. 16. By

Order dated July 23, 2021, District Judge Seybert referred Defendant J. Goylan's motion to

dismiss to the undersigned. For the reasons set forth below, the undersigned respectfully

recommends that Defendant J. Golyan's motion to dismiss be granted, the motion for default

---

[1] According to Defendant Joseph Golyan his name is misspelled throughout Plaintiff's filings in this action. To avoid confusion, "Josef" or "Joseph" shall be referred to as J. Golyan throughout this report and recommendation.

judgment be granted as to Miracle Mile Properties 2 LLC, Miracle Mile Properties 4 LLC, Pari Golyan, Kourosh Golyan, and Faraidoon Golyan (the "Remaining Defendants") and Plaintiff be awarded damages in the following amounts: (1) $37,537.50 in unpaid overtime (2) $119,906.25 as liquated damages for frequency of pay violations; (3) $5,000 for wage notice violations and $5,000 for wage statement violations; (4) $47,537.50 in liquidated damages; and (5) $6,941.86 in prejudgment interest.  The undersigned further recommends that Plaintiff's request for attorneys' fees and costs be denied.

## BACKGROUND

### A.    Factual Background

#### 1.  The Complaint

Plaintiff alleges upon information and belief that Defendants Miracle Mile Properties 2 LLC and Miracle Mile Properties 4 LLC (together, "Corporate Defendants") are domestic limited liability companies, organized and existing under the laws of the State of New York with a place of business in Great Neck, New York.  Compl. ¶¶  6, 7.  According to the complaint, these two defendants are enterprises "engaged in commerce."  *Id.* ¶ 16.  In the Declaration of Marvin Williams, dated March 24, 2021 ("Williams Dec."), Plaintiff asserts that Miracle Mile Properties 2 LLC and Miracle Mile Properties 4 LLC engaged in interstate commerce because in order for him to do his job he "used tools and materials that had been purchased through interstate commerce, including bags, brooms mops and cleaning supplies."  Williams Dec. at ¶ 28.  Plaintiff further alleges that Defendants had revenues in excess of $500,000.  Compl. ¶ 42. Pari Golyan, Kourosh Golyan, J. Golyan and Faraidoon Golyan (the "Individual Defendants") are alleged to be owners, officers, directors, members and/or managers of Defendants Miracle Mile Properties 2 LLC and Miracle Mile Properties 4 LLC, who participated in the day-to-day

operations of the Corporate Defendants. *Id.* ¶¶ 8, 10, 12, 14. Plaintiff also asserts, that the Individual Defendants had the power to: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise and control the work of employees, and (v) otherwise affect the quality of the Plaintiff's employment. *Id.* ¶¶ 9, 11, 13, 15.

Beginning in June 2016, Plaintiff was employed by Defendants to work as a maintenance worker and cleaner in several different locations throughout Great Neck New York. *Id.* ¶ 19. According to Plaintiff, the Individual Defendants assigned his daily responsibilities, including telling Plaintiff which offices and bathrooms to clean in each of Defendants' buildings. *Id.* ¶ 26. Over the course of Plaintiff's employment, Plaintiff was asked to perform additional tasks, including shoveling snow from parking lots, repairing fixtures, responding to tenants' concerns, picking up office supplies, helping real estate agents with the showing of buildings, helping clear a fallen tree from one of the Defendants' buildings, and other tasks. *Id.* ¶ 27. Plaintiff was hired by Defendants in June 2016 to work as a maintenance worker for approximately 40 hours per week. *Id.* ¶ 21. On January 2, 2017, Defendants directed Plaintiff to also work in the evenings as a cleaner. *Id.* ¶ 22. Plaintiff then worked 70 hours per week. Plaintiff worked five days per week, Monday through Friday, 9:00 a.m. to 11:00 p.m. *Id.* ¶ 23. According to Plaintiff, he was paid $1,012.50 per week. Williams Dec. ¶ 39. Plaintiff contends Defendants never paid him overtime wages for hours worked in excess of forty hours per week. *Id.* ¶ 35. Indeed, Plaintiff contends that to avoid paying an overtime premium, Defendants paid Plaintiff using two separate paychecks, one from Miracle Mile Properties 2 LLC, and the second from Miracle Mile Properties 4 LLC. *Id.* ¶ 36. Additionally, Defendants required Plaintiff to clock-in and clock-out twice a day on two separate time-keeping devices. Both of these time-keeping devices are

located in the same room at 287 Northern Blvd, Suite 110, Great Neck, New York 11201.  *Id*. ¶ 37.  According to Plaintiff, Defendants also failed to post notices of minimum wage and overtime wage requirements or provide proper wage statements. *See id*. ¶¶ 36-37.

Plaintiff alleges that the limited liability companies employing him, Miracle Mile Properties 2 LLC and Miracle Mile Properties 4 LLC, though nominally distinguishable, are the same company.  *Id*. ¶ 20. The same Individual Defendants own, manage, and/or operate both companies.  *Id*. ¶ 22.  On Plaintiff's paychecks, both Miracle Mile Properties 2 LLC and Miracle Mile Properties 4 LLC share the same address and phone number.  *Id*. ¶21.  Plaintiff asserts that when assigning Plaintiff work, the Individual Defendants made no distinction between the two companies, and Plaintiff earned the same rate of pay per hour regardless of the company through which he was paid.  *Id*. ¶¶ 23, 24 and 30.

## 2. **Service of Process**

According to Plaintiff,  Plaintiff, through his representatives, served Miracle Mile Properties 2 LLC and Miracle Mile Properties 4 LLC with the Summons and Complaint through the New York State Department of State on July 20, 2020.  Declaration of James Sullivan ("Sullivan Dec.") ¶ 7.  Subsequently, on July 27, 2020, Plaintiff, through his representatives, served the Summons and Complaint on Pari Golyan, Kourosh Golyan, J. Golyan and Faraidoon Golyan. *Id*. ¶ 9.  Plaintiff contends that service upon each of the Individual Defendants was effectuated at 287 Northern Blvd. Suite 110 Great Neck, NY 11021 by "delivering thereat a true copy/copies of each to DANIEL TUBIAN a person of suitable age and discretion. Said premises is the defendant's/respondent's actual place of business within the state. He identified himself as the CO-WORKER of the  defendant/respondent."  *Id*. at Ex. 8.

## B. **Procedural History**

4

Plaintiff commenced this action by filing a complaint on July 14, 2020.  ECF No. 1.

Defendants failed to answer or otherwise respond to the complaint.  On December 1, 2020,

Plaintiff requested entry of a default.  ECF No. 11.  The certificate of default as to all Defendants

was entered on December 9, 2020.  ECF No. 12.  Plaintiff moved for default judgment on March

29, 2021.  ECF No. 13.  In support of the motion for default judgment, Plaintiffs have submitted

the Declaration of James F. Sullivan along with attached exhibits, the Declaration of Marvin

Williams, and a memorandum of law.  ECF Nos. 21, 22.  By Order dated April 2, 2021, Judge

Seybert referred Plaintiff's motion for default judgment to the undersigned.  On July 22, 2021,

Defendant J. Golyan filed an Opposition to Plaintiff's motion for Default Judgment and a Cross

Motion to Dismiss for Insufficient Service of Process Pursuant to Federal Rule of Civil

Procedure 12(b)(5).  ECF No.16.  Defendant J. Golyan's motion was referred to the undersigned

by Judge Seybert on July 23, 2021.  Plaintiff has opposed the motion to dismiss.  ECF No. 18.

Defendants, other than J. Golyan,  have not opposed the motion for default judgment or

responded in any way.

## DISCUSSION

### A.  Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(5)

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural

requirement of service of summons must be satisfied."  *Dynegy Midstream Servs. v.

Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006); *see also Steel Co. v. Citizens for a Better Env't*,

523 U.S. 83, 94-95, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) ("The requirement that

jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial

power of the United States' and 'is inflexible and without exception'").  Thus, the Court begins its

analysis by addressing the arguments pursuant to Rule 12(b)(5) concerning the lack of proper

service on Defendant J. Goylan.[2]

Under Rule 2(b)(5), a defendant may move to dismiss an action if service of process did not comply with Rule 4(m).  Rule 4(m) provides, in relevant part, that

> [i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  "[W]hen a defendant moves to dismiss under rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298-99 (2d Cir. 2005); *see also Schwasnick v. Fields,* 08-CV-4759(JS)(ARL), 2010 U.S. Dist. LEXIS 65958, 2010 WL 26799351 (E.D.N.Y. June 30, 2010).

Service of process upon an individual within a judicial district of the United States is governed by Rule 4(e) which states that service may be completed by:

(1)   following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2)   doing any of the following:

   (A)   delivering a copy of the summons and of the complaint to the individual personally;

   (B)   leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

   (C)   delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).  In this case, the applicable state law is governed by Section 308 of the New

---

[2] In considering a Rule 12(b)(5)  motion to dismiss for insufficient service of process, the court "must look to matters outside the complaint to determine whether it has jurisdiction."  *Hertzner v. United States Postal Serv.*, No. 05-CV-2371, 2007 U.S. Dist. LEXIS 19691, 2007 WL 869585, at *3 (E.D.N.Y. Mar. 20, 2007); *see also Hilaturas Miel, S.L. v. Republic of Iraq,* 573 F.Supp.2d 781, 796 (S.D.N.Y. 2008).

York Civil Practice Law and Rules ("C.P.L.R.") which provides in pertinent part:

> Personal service upon a natural person shall be made by any of the following methods:

> 1.    by delivering the summons within the state to the person to be served; or

> 2.    by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other . . . .

> 3.    by delivering the summons within the state to the agent for service of the person to be served as designated under rule 318 . . . .

> 4.    where service under paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such affixing and mailing to be effected within twenty days of each other . . . .

> 5.    in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section.

C.P.L.R. § 308.

Here, Plaintiff argues that "Defendant, JOSEF GOLYAN, was served by delivering the

Summons and Complaint to a person of suitable age and discretion at Defendant, JOSEF

GOLYAN's, actual place of business by delivering a copy of same to Daniel Tubian a

person of suitable age and discretion on July 27, 2020.  Process was served at the business

address of 287 Northern Boulevard, Suite 110, Great Neck, New York 11021.  This is the

address listed for Defendants, MIRACLE MILE PROPERTIES 2 LLC and MIRACLE MILE PROPERTIES 4 LLC (hereinafter Miracle Mile Properties) with the Department of State."  Pl. Opp. at 3.

Defendant J. Golyan argues, however, that 287 Northern Boulevard is not his actual place of business and has provided his own declaration, along with the affidavit of Daniel Tubian, provided in an unrelated state court proceeding indicating that Golyan has not practiced at the medical offices located at 287 Northern Boulevard since 2017.  According to J. Golyan, "[h]e and his brothers, Bijan (who passed away last year) and Faraidoon operated a medical practice until his family members improperly ousted Joseph from the family business in or around 2017 – three years before this action began." J. Golyan Dec. ¶ 3.  That medical practice is located at 287 Northern Blvd. Suite 108, Great Neck, NY 11021.  *Id.*  Interestingly, while J. Golyan has provided excerpts of an affidavit provided by Daniel Tubian in an unrelated action indicating that J. Golyan's actual place of business at this time is 6902 Austin St, Forest Hills, nowhere in his affidavit does J. Golyan make that assertion.

According to Defendant J. Golyan, Daniel Tubian, the individual alleged by Plaintiff to have accepted service of his behalf, is the bookkeeper of Choice Management, and he signed a statement "under the penalty of perjury" dated December 22, 2020 confirming that Suite 110 is not Joseph's actual place of business.  According to Tubian, "[o]ver the last few years, I have only seen Joseph Golyan 3 or 4 times." J. Golyan Dec., Ex. A.  Tubian further states that "Joseph had a medical office here until about 2 years ago in Suite 108", but Joseph "hasn't come in since."  *Id*.  Instead, "Joseph left and went to practice from 6902 Austin St in Queens."  *Id*. Tubian goes on to say that "[a]s far as I know, Joseph is now practicing in the office on Austin Street."  *Id.*  Further, Defendant J. Golyan notes that in connection with an unrelated matter,

Plaintiff was tape recorded admitting to a private investigator that, among other things, Defendant J. Golyan "has not come over [to the office] anymore because [he and his family] do not get along." Anderson Dec., Ex. A ¶ 16.4.  In addition, Plaintiff noted that the bookkeeper, Daniel Tubian, "changed the code to the door so that Dr. Joseph could not get in." Anderson Dec., Ex. A ¶ 24.

Under New York C.P.L.R. § 308(2), service is proper if made at one's "actual place of business."  The statute defines "actual place of business" to include "any location that the defendant, through regular solicitation or advertisement, has held out as its place of business." C.P.L.R. 308(6).  "New York courts have construed 'actual place of business' to include (1) a place where the defendant regularly transacts business, or (2) an establishment that the defendant owns or operates, where there is a clear identification of the work performed by her with that place of business." *TAGC Management, LLC v. Lehman*, 842 F. Supp. 2d 575, 582 (S.D.N.Y. 2012) (quotations and citation omitted); *see also Meyer v. Ahmad*, No. 08-cv-5147, 2009 U.S. Dist. LEXIS 126043, at *6, 2009 WL 6055842 (E.D.N.Y. Oct. 1, 2009) ("in order to comply with the service requirements of those rules, the defendant must regularly conduct business at the site of service, or there must be some "clear identification of the work performed by [the defendant] at that place of business"), report and recommendation adopted by 2010 U.S. Dist. LEXIS 24982, 2010 WL 1005853 (E.D.N.Y. Mar. 17, 2010).  In support of his motion to dismiss for insufficient service, Defendant J. Golyan has provided evidence that his actual place of business in 2020, when the lawsuit was started was not 287 Northern Boulevard, Suite 110, Great Neck, New York 11021.  Plaintiff has not refuted this evidence and argues only that "[i]t is uncontested that individual Defendants, including JOSEF GOLYAN, have an ownership interest in the corporate Defendants herein.  Defendant, JOSEF GOLYAN, admits in his cross-motion

that he has an ownership interest in Miracle Mile Properties."  However, it is not effective service to serve an individual at the place of business of an entity he owns unless there is an indication the individual actually works at that address.  *See, e.g., Shiqiu Chen v Best Miyako Sushi Corp.,* No. 16-CV-2012 (JGK) (BCM), 2021 US Dist. LEXIS 21747, 2021 WL 707273 (S.D.N.Y. Feb. 1, 2021) (no evidence to suggest that individual defendants were actually working at the company when plaintiffs' process server delivered the summons and complaint); *Kwan v. Schlein*, 441 F. Supp. 2d 491, 497 (S.D.N.Y. 2006) (dismissing claim against individual defendant for insufficient service where he was a minority shareholder of the publishing company where service was effected at the company's office but there was no indication that the company's office was his actual place of business); s*ee also Ryan v Potbotics, In*c., 2021 NY Slip Op 32284[U] (Sup Ct, NY County 2021) ("listing with the Secretary of State provides evidence of actual place of business but can be rebutted"). Here, the only evidence presented indicates J. Golan maintained an actual place of business at 6902 Austin Street rather than 287 Northern Boulevard where he was served.

In addition, Plaintiff appears to suggest that it is sufficient for purposes of service that Defendant J. Golyan maintained an actual place of business at 287 Northern Blvd. in the past. Pl.  Opp. at 3.  The critical inquiry, however, is "defendants' business address at the time of service, and not when the cause of action arose." *Jackson v. Cty. of Nassau*, 339 F. Supp. 2d 473, 478 (E.D.N.Y. 2004) (service of process on county medical center's designated agent was insufficient to effect service on physician where physician was no longer employed by medical center at time of service); *see also Tooker v. Town of Southampton*, No. 17-CV-6006, 2019 U.S. Dist. LEXIS 11781, 2019 WL 1227805, at *6 (E.D.N.Y. Jan. 23, 2019), report and recommendation adopted, 2019 U.S. Dist. LEXIS 41025, 2019 WL 1233629 (E.D.N.Y. Mar. 12,

2019) (rejecting service on former district attorney at the district attorney's office because he no longer worked there); *Baity v. Kralik*, 51 F. Supp. 3d 414, 431 (S.D.N.Y. 2014) ("A defendant's 'actual place of business' is his or her 'business address at the time of service, and not when the cause of action arose.'")(quoting *Colvin v. State Univ. Coll. at Farmingdale*, 2014 U.S. Dist. LEXIS 85678, 2014 WL 2863224, at *14 (E.D.N.Y. June 19, 2014)); *Dominguez v. B S Supermarket, Inc*., 13 CV 7247 (RRM), 2016 U.S. Dist. LEXIS 167879, 2016 WL 7647577, at *4 (E.D.N.Y. Dec. 1, 2016) (service on individual defendant was insufficient where the store where service was effected was no longer his actual place of business), report and recommendation adopted, 2016 U.S. Dist. LEXIS 167879, 2017 WL 52852 (E.D.N.Y. Jan. 4, 2017).  Defendant J Golyan has presented unrefuted evidence that 287 Northern Boulevard was no longer his actual place of business.

As a matter of law, delivery of process to the wrong suite, office, or address does not satisfy the C.P.L.R.'s requirement that service be delivered to a defendant's "actual place of business." *See, e.g., Dunham v. Town of Riverhead*, No. 19-cv-03289 (DLI) (CLP), 2020 WL 5820157, at *3 (E.D.N.Y. Sept. 30, 2020) (finding that "Plaintiffs failed to effect service on [defendant] properly" because the service was "defective as it was sent to the wrong address"); *Woods v. M.B.D. Community Housing Corp*., 90 A.D.3d 430, 430 (1st Dep't 2011) (finding that defendant was not properly served where "the address listed on the affidavit of service was not defendants' actual place of business").  It is Plaintiff's burden to demonstrate that service was adequate.  *Burda Media, Inc.*, 417 F.3d at 298-99.  Plaintiff here has failed to do so. Accordingly, the undersigned respectfully recommends that J. Golan's motion to dismiss for ineffective service be granted.

**B.      Legal Standard Governing Default Judgments**

The Court now turns to Plaintiff's motion for default judgment as to the Remaining Defendants. Federal Rule of Civil Procedure 55 establishes a two-step process regarding default judgments. First, the Clerk of the Court enters the party's default. Then, as here, a motion for a default judgment is made to the district court judge. A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.,* No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) ("[A]ll well-pleaded factual allegations in the plaintiff's complaint pertaining to liability are deemed true"). However, even if a plaintiff's claims are deemed admitted, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law' " prior to entering default judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (alterations omitted). A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997). The movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 159.

"In the context of a motion for default judgment on FLSA and NYLL claims, 'the plaintiff's recollection and estimates of hours worked are presumed to be correct.'" *Pena v. Super Econ. One Way Supermarket Corp.*, No. 20 CV 3060 MKB PK, 2021 WL 4755603, at *3

12

(E.D.N.Y. Sept. 8, 2021), report and recommendation adopted sub nom. 2021 WL 4398204 (E.D.N.Y. Sept. 25, 2021) (*citing Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) ("[I]n the absence of rebuttal by defendants, or where the employer has defaulted, as here, the employee's recollection and estimates of hours worked are presumed to be correct.") (quotations, citations, and alterations omitted)).

### C.    Federal and State Wage Laws

The FLSA requires employers to pay their employees the statutory minimum wage as well as a premium (one and one-half times the regular rate) for hours worked above 40 hours per week.  29 U.S.C. §§ 206, 207.  The NYLL mirrors the FLSA in most but not all respects.  The NYLL also requires employers to pay all manual workers on a weekly rather than bi-weekly basis. NYLL § 191 et seq.

The FSLA and NYLL both provide for an additional award of liquidated damages to plaintiffs who establish that their employer has failed to pay required wages.  Specifically, an employer who violates the federal overtime provisions "shall be liable" to employees for overtime in "an additional equal amount as liquidated damages." 29 U.S.C. § 216 (b).10. Pursuant to the NYLL, employees may also recover liquidated damages of 100% of wages owed unless "the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." NYLL § 198(1–a).

Finally, under the NYLL, employees must be provided a written notice of their pay when they are hired and wage statements for each payment of wages.  *See* NYLL §§ 195(1), 195(3), 198(1).  Pursuant to section 198(1-b) of the NYLL, an employee who, within ten business days of his or her first day of employment, was not provided with notice in accordance with section 195(1) of the NYLL, is entitled to statutory damages of $50 per day during which the violation

occurred, up to a maximum of $5,000.  *See* NYLL § 198(1-b).  Section 198(1-d) of the NYLL

provides that, with respect to the regular wage statements required pursuant to section 195(3), an

employee who has not been provided with such a statement is entitled to recover statutory

damages of $250 per day, up to a maximum of $5,000.  *See* NYLL § 198(1-d).

### 1.      Employer Status

In order to establish liability under the FLSA, the plaintiffs must prove either individual

liability or enterprise liability.  *See Leon v. Chen*, No. 16-CV-480, 2017 WL 1184149, at *4

(E.D.N.Y. Mar. 29, 2017).  Individual liability applies to any individual "engaged directly in

interstate commerce or in the production of goods for interstate commerce." *Coley v. Vannguard

Urb. Improvement Ass'n, Inc*., No. 12 CV 5565 PKC RER, 2018 WL 1513628, at *3 (E.D.N.Y.

Mar. 27, 2018), as amended (Mar. 29, 2018) (quoting *Tony & Susan Alamo Found. v. Sec'y of

Labor,* 471 U.S. 290, 295 n.8 (1985)).  To determine who qualifies as an "employer" for

purposes of individual liability, the Second Circuit looks to the factors set forth in *Carter v.

Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984), which are "whether the alleged employer (1)

had the power to hire and fire the employees, (2) supervised and controlled employee work

schedules or conditions of employment, (3) determined the rate and method of payment, and (4)

maintained employment records." *Coley*, 2018 WL 1513628, at *4.  In contrast, enterprise

liability applies to entities that: "(1) perform related activities "for a common business purpose";

(2) have "employees engaged in commerce or in the production of goods for commerce, or . . .

employees handling, selling, or otherwise working on goods or materials that have been moved

in or produced for commerce by any person"; and (3) have an "annual gross volume of sales

made or business done [ ] not less than $500,000." *Id* *3 (quoting 29 U.S.C. § 203(r)–(s)).  The

courts in this Circuit had often held that the plaintiffs' allegations are sufficient to establish both

individual and enterprise liability under the FLSA.

In this case, Plaintiff alleges that the Corporate Defendants engaged in interstate commerce due to the fact in order for Plaintiff to do his job he "used tools and materials that had been purchased through interstate commerce, including bags, brooms, mops and cleaning supplies." Williams Dec. ¶ 28. Plaintiff further alleges that Defendants had revenues in excess of $500,000. Compl. ¶ 42. Plaintiff also asserts that the Individual Defendants had the power to hire and fire employees, supervise and control employee work schedules or conditions of employment, determine the rate and method of payment, and maintained employee records at the Gel Factory. *Id.* ¶¶ 13-15.

Based on the allegations in the complaint and Plaintiff's declaration, the undersigned finds that Defendants were Plaintiff's employers under the FSLA. Although Plaintiff has asked the Court to infer that Defendants are engaged in interstate commerce simply by virtue of the fact that he uses goods originating from outside of the state, Defendants have forfeited any contention that Plaintiff is not entitled to the protection of the FLSA given their default. *See Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 86 (E.D.N.Y. 2012); *see also Huerta v. Victoria Bakery*, No. 10 CV 4754 RJD JO, 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012) ("It is inconceivable that some of the bread-making materials used by plaintiffs did not originate out of state or that the bakery did not sell its products outside the State of New York.").

In addition, once liability is established under the FSLA, courts will routinely impose liability for NYLL violations. *Rodriguez v. Ridge Pizza Inc.,* No. CV 16-254 (DRH) (AKT), 2018 U.S. Dist. LEXIS 42862, 2018 WL 1335358, at *7 (E.D.N.Y. Mar. 15, 2018) (citing *Guardado v. 13 Wall St., Inc.,* No. 15-CV-2482, 2016 U.S. Dist. LEXIS 167887, 2016 WL 7480358, at *5 (E.D.N.Y. Dec. 2, 2016), report and recommendation adopted by, 2016 WL

15

7480363 (E.D.N.Y. Dec. 29, 2016)).  Moreover, the NYLL definition of "employer" differs slightly from the FLSA definition in that it "does not require that a [d]efendant achieve a certain minimum in annual sales or business in order to be subject to the law.'" *Id.* (citing *Fermin v. Las Delicias Peruanas Rest., Inc.,* 93 F. Supp. 3d 19, 34 (E.D.N.Y. 2015).  "Under the NYLL, 'an employee is simply defined as 'any individual employed or permitted to work by an employer in any occupation.'" *Id.*  As such, the Court's analysis under the NYLL "focuses more on 'the degree of control exercised by the purported employer' over the purported employee, 'as opposed to the economic reality of the situation.'" *Id*  For these reasons, the undersigned finds that Plaintiff has also established the existence of an employment relationship within the meaning of the NYLL.

## 2.    Employee Status

To establish a claim under the FLSA, Plaintiff must also show that he is an "employee" of Defendants within the meaning of the FLSA.  *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 31–32 (E.D.N.Y. 2015).  For the purpose of this default motion, Plaintiff qualifies as employee based on his allegation that he was employed as a maintenance worker and cleaner from 2016 to the present.  *See id.* (citing *Garcia v. Badyna*, No. 13 Civ. 4021 (RRM) (CLP), 2014 U.S. Dist. LEXIS 133722, 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014) ("Insofar as Plaintiffs' Complaint alleges that Defendants employed Plaintiffs within this statutory meaning, "[i]t follows . . . that for purposes of this default, [they] qualif[y] as ... 'employee[s]' under the FLSA.")).  Similarly, to recover under the NYLL, Plaintiff must establish that he was an "employee" as defined by the statute.  *Id.*  In fact, Plaintiff's burden in establishing that he was an "employee" entitled to NYLL protections is nearly identical to the burden under the FLSA.  *Id.*  In this case, there is no question that Plaintiff qualifies as an

employee under both statutes.

### 3.    Statute of Limitations

Before turning to the Remaining Defendants' actual liability under the statutes, the Court must address the relevant statute of limitations.  The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years.  *See* 29 U.S.C. § 255(a).  The NYLL establishes a six-year limitations period.  *See* N.Y. Lab Law §§ 198(3), 663(3).  Because Plaintiff has asserted claims under both the FLSA and NYLL, relief is available under either statute.  *See Pineda v. Masonry Const., Inc.,* 831 F. Supp. 2d 666, 676 (S.D.N.Y. 2011).  The undersigned will, therefore, employ the NYLL for the purposes of unpaid overtime claims which covers all of Plaintiff's claims from June 2016.

### 3.    Unpaid Overtime

Plaintiff alleges that the Remaining Defendants violated the NYLL's overtime provisions by failing to pay him overtime wages.  Compl. ¶¶ 77-89.  Specifically, Plaintiff claims that beginning on January 2, 2017, Defendants increased his hours to approximately 67.5 hours per week by requiring him to work in the evening cleaning Defendants' buildings.  *See* Williams Dec. ¶ 32.  In his declaration, Plaintiff claims "from on or around January 2, 2017 to the present, [he] has worked five days per week, Monday through Friday, from approximately 9 AM to 11 PM, as a maintenance worker and cleaner at Defendants' buildings.  *Id.* ¶ 33.  According to Plaintiff, from January 2017 to the present, Defendants willfully and knowingly failed to pay him an overtime premium for the hours that he worked over forty hours in a work week and "in a scheme to avoid paying an overtime premium, Defendants paid [him] using two separate paychecks, one from Miracle Mile Properties 2 LLC and the second from Miracle Mile Properties 4 LLC."  *Id.* ¶¶ 35-36.  Plaintiff further states that "to avoid paying an overtime

premium, Defendants have required me to clock-in and clock-out twice a day on two separate time-keeping devices. Both of these time-keeping devices are located in the same room at 287 Northern Blvd, Suite 110, Great Neck. New York, 11201." *Id.* ¶ 37.   As stated above, the NYLL regulations state that: "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate...." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.  Thus. Plaintiff claims that he was entitled to weekly overtime wages of $206.25 per week for the 182 weeks between January 2, 2017 and June 22, 2020.  *See* Sullivan Dec., Ex. G. Thus, Defendants would owe Plaintiff $37,537.50 in overtime wages.

In order for Plaintiff to prevail on his claim for unpaid overtime wages he must establish that the two Corporate Defendants constitute a "single integrated enterprise."  The FLSA and the NYLL allow for multiple different entities to be treated as a single employer where, despite nominal difference, the entities are "part of a single integrated enterprise."  *Perez v. Westchester Foreign Autos., Inc*., No. 11 CV 6091, 2013 U.S. Dist. LEXIS 35808, 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013); *see also Canelas v, A'Mangiare Inc*., No. 13 CV 3630, 2015 U.S. Dist. LEXIS 66316, 2015 WL 2330476, at *6 (S.D.N.Y. May 14, 2015) (applying the "single integrated enterprise" test to claims under the NYLL).  Such a finding allows all entities to be held responsible for the FLSA and NYLL violations of any one entity. *Id.*  To establish single employer liability, courts employ a four-factor test, analyzing the extent of: (1) the interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.  *Rios v. B B Q Chicken Don Alex, Inc.,* No. 16-CV-6630 (ILG), 2018 U.S. Dist. LEXIS 579, at * 7-8, 2018 WL 264512 (E.D.N.Y. Jan. 2, 2018); *Cardenas v. Edita's Bar & Rest., Inc*., 17-CV-5150 (RPK) (RML), 2020 U.S. Dist. LEXIS 258547, 2021 WL 4480570 (E.D.N.Y. Sept. 30, 2021) (finding two bars constituted a single

enterprise for purposes of hour calculations under the FLSA and NYLL); *Draskovic v. Oneota Assocs.*, LLC, No. 17-CV-5085 (ARR) (JO), 2019 U.S. Dist. LEXIS 28017, 2019 WL 783033, at *12 (E.D.N.Y. Feb. 21, 2019) ("undisputed evidence in the record reveals that these entities operate out of a shared office using shared employees, and that all are managed and controlled" by same individual, entities "'are so intertwined that it is difficult to tell where the business of [one] stops and the business of [another] begins.'") (quoting *Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.,* No. 14-CV-5269, 2016 U.S. Dist. LEXIS 127425, 2016 WL 5092588 (E.D.N.Y. Sept. 19, 2016)); *Garcia v. Chirping Chicken NYC, Inc.*, No. 15 CV 2335 (JBW) (CLP), 2016 U.S. Dist. LEXIS 32750, at *21 (E.D.N.Y. Mar. 11, 2016) (ruling that entities that "maintain the same address, owners, management, personnel, [and] equipment" and "are involved in the same industry" constituted single employer under FLSA and NYLL), report and recommendation adopted by 2016 U.S. Dist. LEXIS 46183 (E.D.N.Y. Mar. 31, 2016); cf. *United States v. Stanley*, 416 F.2d 317, 318 (2d Cir. 1969) (affirming that businesses "were a single 'enterprise'" when "[t]hey were all located at the same address; production employees were shifted from one to another; [and] the bookkeeping for all was performed by the same employees").

Here, because the Court must accept all of Plaintiff's factual allegations as true, the Court finds that Plaintiff has adequately established that the Remaining Defendants constitute a single employer under the law. The Complaint alleges that Miracle Mile Properties 2 LLC and Miracle Mile Properties 4 LLC, are located at the same addresses, and are wholly owned and operated by Individual Defendants.  Compl. ¶¶ 6, 7, 8, 10, 12, 14.  In addition, Plaintiff contends that he received paychecks from each of the Corporate Defendants listing the same address and phone number and that the time clocks he used to clock in and out for each of the entities were located

in the same room at 287 Northern Boulevard.  Williams Dec. ¶¶ 36-37.  Plaintiff also states that Defendants made no distinction between work assigned to him on behalf of Miracle Mile Properties 2 LLC and Miracle Mile Properties 4 LLC or when negotiating his wages.  Williams Dec. ¶¶ 23-24.  In the context of a default judgment, these allegations are sufficient to establish that all of the Remaining Defendants were a single employer for purposes of liability under the FLSA and the NYLL.  Thus, the weekly hours worked by Plaintiff should be considered hours worked for a single entity.

Accordingly, the undersigned finds that a default judgment against the Remaining Defendants for failure to pay overtime is appropriate under the NYLL.  The undersigned, therefore, recommends that the motion be granted, and that Plaintiff be awarded $37,537.50.

### 4. Timeliness of Wages under NYLL § 191

Plaintiff also claims that he was not paid in a timely manner and that any untimely payment of wages, even if ultimately paid, constitutes its own underpayment warranting an award of liquidated damages in violation of Section 191 of the NYLL.  According to Plaintiff, from June 6, 2016 to the present, he has been paid every two weeks, Williams Dec. ¶34, and because he is a maintenance worker and cleaner he is considered a manual worker under New York law and therefore must be paid weekly.  *See Sorto v. Diversified Maint. Sys*., LLC, No. 20-CV-1302, 2020 U.S. Dist. LEXIS 242856, 2020 WL 7693108, at *2 (E.D.N.Y. Dec. 28, 2020) (denying motion to dismiss Section 191 claim where plaintiff who provided maintenance and cleaning services was considered a manual worker).

Section 191 of Article 6 of the NYLL, is titled "Frequency of Payments," and sets forth requirements governing an employer's wage payments to various subcategories of employees.  N.Y. Lab. Law § 191(1)(a).  Article 6 of the NYLL also includes Section 198, entitled "Costs, remedies," which provides in subsection 1-a:

> In any action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the [CPLR], and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of wages found to be due . . .

13 N.Y. Lab. Law § 198(1-a); see id. § 198(3) ("All employees shall have the right to recover full wages, benefits, and wage supplements and liquidated damages accrued during the six years previous to the commencing of such action . . ."). This statue has been interpreted by courts in the district to allow plaintiffs to pursue a claim to recover the underpayment as liquidated damages. *See, e.g., Sorto v. Diversified Maint. Sys., LLC*, No. 20-CV-1302 (JS) (SIL), 2020 WL 7693108, at *2-3 (E.D.N.Y. Dec. 28, 2020); *Mabe v. Wal-Mart Assocs., Inc*., No. 1:20-CV-00591, 2021 WL 1062566, at *6 (N.D.N.Y. Mar. 18, 2021); *Duverny v. Hercules Medical P.C.,* 2020 U.S. Dist. LEXIS 37547, 2020 WL 1033048, at *5 (S.D.N.Y. Mar 3, 2020); *Vega v. CM & Assoc.s Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1144, 107 N.Y.S.3d 286, 287 (2019) (recognized that while the NYLL § 198 does not expressly authorize a private action for violation of NYLL § 191, a remedy may be implied since Plaintiff is one of the class for whose particular benefit the statute was enacted).

Here, Plaintiff claims that from June 6, 2016 to January 1, 2017, Defendants delayed the payment of $600 every other week and from January 2, 2017 to June 28, 2019, Defendants delayed the payment of $1,218.75 every other week. Williams Dec. ¶39; Sullivan Dec., Ex. G (Damage Calculation). Accordingly, the undersigned respectfully recommends that default judgment be granted, and Plaintiff be awarded $119,906.25 in liquidated damages, on his frequency of pay claim.

### 5.    The NYLL Wage Notice Statutory Penalties

Plaintiff also seeks damages due to Defendants' failure to provide him with written notice of his pay when his was hired and wage statements for each payment of wages under Section 195 of the NYLL. N.Y. Lab. Law §§ 195(1), 195(3).  For Defendants' initial failure to provide them with a written wage notice within ten business days of being hired, Plaintiff is entitled to recover $50 for each workweek that the violation continued, up to a statutory maximum of $5,000.  N.Y. Lab. Law § 198(1–b).  Plaintiff has been employed by Defendants for over four years and has never received a wage notice. Therefore, he is entitled to the statutory maximum of $5000. Accordingly, the undersigned recommends that Plaintiff be awarded the $5,000 statutory maximum.

Plaintiff is also entitled to recover $250 for each week that he did not receive a wage statement which accurately reflected his overtime wages up to a statutory maximum of $5,000. N.Y. Lab. Law § 198(1–d); s*ee also Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 467-69 (E.D.N.Y. 2015) (finding, as a matter of first impression, that NYLL § 195(3) required that wage statements contain an accurate account of overtime hours an employee actually worked, rather than just a statement of the overtime hours for which the employee is being paid, and that a contrary holding would be contrary to the text and legislative history of the WTPA). Therefore, the undersigned further recommends that Plaintiff be awarded $5,000 for the workweeks in which he received no wage statement.

### 6.    Liquidated Damages

Both federal and state law provide for an additional award of liquidated damages to plaintiffs who establish that their employer has failed to pay required wages.  While some court have "disagreed as to whether a plaintiff may secure cumulative awards of liquidated damaged

under both statutes," the undersigned agrees with those courts that have concluded that a cumulative award should not be permitted. *See Gunawan v. Sake Sushi Rest.,* 897 F. Supp. 2d 76, 91 (E.D.N.Y. 2012) (citing *Greathouse v. JHS Sec., Inc.*, 2012 WL 3871523, at *7 (S.D.N.Y. Sept. 7, 2012) (collecting cases and concluding that a cumulative award is not permitted)).  Here, Plaintiff has only request liquidated damages under the NYLL.  Pl. Mem. ECF No. 13-1, p.2. Under the NYLL, employees may recover liquidated damages of 100% of wages owed unless "the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." NYLL § 198(1–a).  Under the NYLL, "liquidated damages are presumed unless defendants can show subjective good faith." *Zubair v. EnTech Eng'g, P.C.*, 900 F. Supp. 2d 355, 360 n. 3 (S.D.N.Y. 2012).  As such, the undersigned further recommends that Plaintiff be awarded $47,537.50 in liquidated damages.

### 7. Prejudgment Interest

Plaintiff also seeks pre-judgment interest for their NYLL unpaid wage damages from 2016 to the date of filing of the complaint.  Pl. Mem. at ECF No. 1301, p.22.  "Although it is 'well settled' that pre-judgment interest is not awardable under FLSA where liquidated damages are awarded, 'NYLL permits the award of both liquidated damages and pre-judgment interest.'" *Gil v. Frantzis*, No. 17-CV-1520-ARR-SJB, 2018 WL 4522094, at *15 (E.D.N.Y. Aug. 17, 2018), *report and recommendation adopted as modified,* No. 17 CV 1520 ARR SJB, 2018 WL 4299987 (E.D.N.Y. Sept. 10, 2018) (internal citation omitted).  Here, Plaintiffs are entitled to an award of pre-judgment interest on their NYLL damages at a rate of 9% per year. *See id.* (citing N.Y. C.P.L.R. § 5004).  "Where, as here, unpaid wages are 'incurred at various times, interest shall be computed . . . from a single reasonable intermediate date.'" *Id.* (citing N.Y. C.P.L.R. § 5001(b)).  Court have discretion in determining a reasonable date from which

to award pre-judgment interest and often use midpoint date of the NYLL claims sought in the litigation. *Id.* Here, Plaintiff contends he is owed $37,537.50 in wages. Using the midpoint date of June 25, 2018, the date between June 6, 2016, the beginning of Plaintiff's employment, and July 14, 2020, the date on which Plaintiff filed his complaint, Plaintiff is owed $6,941.86 in prejudgment interest.[3] Thus, the undersigned recommends that prejudgment interest be awarded in the total amount of $6,941.86.

### 8.      Attorneys' Fees and Costs

Both the FLSA and the NYLL provide for a mandatory award of reasonable attorney's fees and costs to a prevailing plaintiff. 29 U.S.C. §216(b); N.Y. Labor Law §663(1).  As a general matter, in determining appropriate attorneys' fees, the "starting point" for calculating a "'presumptively reasonable fee," is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee'.") (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)) (and following *Perdue v. Kenny A. ex rel. Winn,* 130 S. Ct. 1662, 1673 (2010).  The Supreme Court held that "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue,* 130 S. Ct. at 1672 (emphasis in original).  "The lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee." *Id.* at 1673 (citation omitted); *see Arbor Hill Concerned Citizens Neighborhood*

---

[3] Plaintiff requests $8,445.95, however the Court does not agree with that interest calculation.

*Assoc.*, 522 F.3d at 184, 190-91 (holding a court determines a "presumptively reasonable fee" by considering case specific factors in order to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplying that rate by the number of reasonable hours).  This assessment is undertaken "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Assoc.*, 522 F.3d at 190.  The reasonableness of hourly rates are guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984), and the relevant community is generally the "district in which the court sits," *Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983).  Moreover, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed," *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012), and this Circuit requires contemporaneous billing records for each attorney, *see Scott v. City of New York,* 643 F.3d 56, 57 (2d Cir. 2011).   Finally, there is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances." *Perdue,* 130 S. Ct. at 1673.

Here, Plaintiff has request attorneys' fees and costs but has failed to specify the amount of fees and costs sought, has failed to submit contemporaneous time records, reflecting time spent, tasks performed, the dates upon with the tasks were performed, and has not provided the court with any information concerning the level of experience of the attorneys who worked on the case.  Plaintiff has also failed to provide any specifics as to costs sought.  Accordingly, the undersigned respectfully recommends Plaintiff's request for attorneys' fees and costs be denied.

**OBJECTIONS**

A copy of this Report and Recommendation is being electronically filed on the date below.  Counsel for plaintiffs shall serve a copy of this Report and Recommendation on the defendants upon receipt and shall file proof of service with the Court.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of service.  Failure to file objections within this period waives the right to appeal the District Court's Order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
          February 1, 2022

_____ /s/
ARLENE R. LINDSAY
United States Magistrate Judge